# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LYNNETTE ANDUJAR STRAUSS,**

      **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　**Case No. 6:04-cv-1133-Orl-22KRS**

**RENT-A-CENTER, INC., d/b/a:  Rent-A-Center, and  RENT-A-CENTER, EAST, INC., f/k/a:  Rent-A-Center, Inc., d/b/a: Rent-A-Center,**

      **Defendants.**

_____

## ORDER

### I.  INTRODUCTION

This cause comes before the Court on Defendant's Motion for Summary Judgment (Doc. No. 33-1), filed on March 29, 2005, to which Plaintiff responded (Doc. No. 37) on April 29, 2005.  Having reviewed the motion and memoranda, Defendant's Motion for Summary Judgment is GRANTED.

### II.  BACKGROUND[1]

---

[1] Defendant, Rent-A-Center, Inc., d/b/a Rent-A-Center and Rent-A-Center East, Inc., f/k/a Rent-A-Center, Inc., d/b/a/ Rent-A-Center ("Defendant" or "Rent-A-Center"), includes in its Motion for Summary Judgment a statement of undisputed material facts.  *See* Motion for Summary Judgment (Doc. No. 33-1) at 2-4.  In her response, the plaintiff, Lynnette Andujar Strauss ("Plaintiff" or "Strauss"), objected to only a few of those facts.  The Court therefore accepts as undisputed those facts that Defendant set forth without objection from Plaintiff.

Plaintiff was employed by Rent-A-Center from approximately November 1999 to November 2001.[2] Plaintiff stated that "[f]rom approximately October 2000" to the date of her termination "on or about November 17, 2001, [she] was subjected to a sexually hostile working environment and terms and conditions of employment different than male employees."[3] Plaintiff claims that she complained of the discrimination to management on numerous occasions.[4] Plaintiff believes that "[a]s a result of her complaints, [she] was subjected to retaliation, including, but not limited to, repeated transfers from store-to-store, denials of promotion and opportunities for promotion, and termination . . . ."[5]

On December 21, 2001, a federal district court in the Southern District of Illinois certified a class action entitled *Wilfong, et al. v. Rent-A-Center, Inc.*, Civil Action No. 00-680-DRH.[6] The class in *Wilfong* was defined to include:

> all women who have been employed by Rent-A-Center, Inc., Thorn Americas, Inc., or Renters Choice, Inc. (the "RAC Companies"), at any time between April 19, 1998 and the Preliminary Approval Date, as well as any women who have made application for employment or been deterred from making application for employment with any of the RAC Companies during the same period, and who have been, are being or may in the future be adversely affected by a continuing alleged policy of discrimination with regard to hiring, promotion, demotion, termination, sexual harassment, hostile work environment and terms and conditions of employment because of their sex, but excluding women

---

[2] Motion for Summary Judgment (Doc. No. 33-1) at 2; *see also* Second Amended Complaint (Doc. No. 19), ¶ 7 at 2.

[3] Second Amended Complaint (Doc. No. 19), ¶ 10 at 3.

[4] *Id.*, ¶ 11 at 3.

[5] *Id.*, ¶ 12 at 3.

[6] *See* Motion for Summary Judgment (Doc. No. 33-1) at 2.

>> who fall within the above definition of Class, but who signed releases of claims of employment discrimination against any of the RAC Companies, unless such release expressly authorizes participation in this Settlement.[7]

Plaintiff concedes that she was a class member in the *Wilfong* lawsuit and never effectively opted out.[8] Plaintiff filed charges with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission ("EEOC") in February of 2002 alleging *inter alia* that she "was discharged as a result of [her] complaint about the mistreatment of women and about the failure of [her] employer to protect [her] from hostile working conditions."[9]

"A Consent Decree for the *Wilfong* case was entered on October 11, 2002. . . . provid[ing] both monetary and equitable relief to the class members, including a re-hire provision for" those employees designated as "terminated eligible claimants."[10] Under the Decree, eligible claimants are those who submitted a claim form and a release to the settlement administrator.[11] Terminated eligible claimants are "eligible claimants who were discharged or

---

[7] *Wilfong* Consent Decree Part I (Doc. No. 33-4), Ex. C-1 at 8.

[8] Plaintiff's Response (Doc. No. 37) at 2; Strauss Declaration (Doc. No. 38-1), ¶¶ 8-9 at 2.

[9] Strauss Declaration (Doc. No. 38-1), ¶ 2 at 1.

[10] Motion for Summary Judgment (Doc. No. 33-1) at 3; *see also Wilfong* Consent Decree Part II (Doc. No. 33-5), Ex. C-2 at 49.

[11] Plaintiff's Opposition to Defendant's Dispositive Motion for Summary Judgment ("Plaintiff's Response") (Doc. No. 37) at 2; *Wilfong* Consent Decree Part I (Doc. No. 33-4), Ex. C-1 at 11.

believe they were forced to resign their employment at [Rent-A-Center] because of their sex."[12] The Consent Decree provided that terminated eligible claimants who followed certain hiring procedures and who affirmatively indicated an interest in re-employment on their claim form would be placed on lists to receive job offers from Rent-A-Center.[13] Defendant claims that "Plaintiff did not avail herself of the re-hire provision."[14] Plaintiff counters that she could not take advantage of the re-hire provision because the provision was for "terminated eligible claimants" only.[15] It is not a disputed issue of fact that Plaintiff did not satisfy the requirements for terminated eligible claimant status.[16] Instead, by the terms of the Consent Decree, Plaintiff was a "base relief recipient," a class member who did not submit a claim form and release or a request for exclusion.[17] Thus, by her own inaction, Plaintiff was unable to avail herself of the re-hire provision.

Plaintiff filed the instant case in the Circuit Court of the 9th Judicial Circuit of Florida on June 29, 2004.[18] "Defendant informed Plaintiff that it intended to assert its rights under the *Wilfong* Consent Decree," and Plaintiff then amended her complaint to remove her sex

---

[12] *Wilfong* Consent Decree Part II (Doc. No. 33-5), Ex. C-2 at 49.

[13] *Id.* at 48-49.

[14] Motion for Summary Judgment (Doc. No. 33-1) at 3.

[15] Plaintiff's Response (Doc. No. 37) at 2.

[16] *Id.*

[17] *Wilfong* Consent Decree Part I (Doc. No. 33-4), Ex. C-1 at 12.

[18] Motion for Summary Judgment (Doc. No. 33-1) at 3.

discrimination and sexual harassment claims.[19] Plaintiff's retaliation claim remained. Defendant removed the case to this Court on July 26, 2004.[20]

"On September 20, 2004, Plaintiff filed a voluntary Chapter 13 bankruptcy petition . . . ."[21] Plaintiff failed to disclose the instant lawsuit in her bankruptcy petition and associated filings as required by law.[22] Plaintiff concedes that she "erred in not disclosing the . . . lawsuit in the filings," but maintains that "the nondisclosure was not the result of an intent on her part to conceal the lawsuit."[23] Plaintiff claims that "[s]he is not represented by counsel in the bankruptcy case" and that "a non-lawyer bankruptcy-petition [preparer], Evens Volcy, drafted the documents for her."[24] Plaintiff states that she "disclosed the lawsuit to Volcy" and that she "mistakenly assumed that the bankruptcy documents included all required disclosures."[25] Plaintiff filed a Suggestion of Bankruptcy (Doc. No. 35) with this Court on April 1, 2005. Additionally, Plaintiff amended her bankruptcy filings, without the assistance of Volcy, to reflect her pending lawsuit against Rent-A-Center.[26] Plaintiff's amended bankruptcy schedules,

---

[19] *Id.*

[20] *See* Notice of Removal (Doc. No. 1) at 1.

[21] Motion for Summary Judgment (Doc. No. 33-1) at 4.

[22] *Id.*

[23] Plaintiff's Response (Doc. No. 37) at 2.

[24] *Id.*

[25] *Id.*

[26] Plaintiff's Response (Doc. No. 37) at 2; *see also* Strauss Declaration (Doc. No. 38-1), ¶ 17 at 5.

statements of affairs, and declarations were filed intermittently between April 5 and April 25, 2005.[27]

Defendant now moves for summary judgment. Defendant argues in its Motion that because Plaintiff concealed the instant lawsuit from the Bankruptcy Court, the doctrine of judicial estoppel precludes Plaintiff from proceeding in this Court and, accordingly, her retaliation claim must be dismissed. Defendant likewise contends that Plaintiff's claim is barred by the doctrines of *res judicata* and accord and satisfaction by virtue of her class membership in *Wilfong*. Last, Defendant believes that Plaintiff's request for equitable belief for reinstatement is without merit and should be dismissed because Plaintiff failed to "avail herself of the equitable relief provided for in the Consent Decree" when "she failed to opt out of the *Wilfong* class action."[28]

### III.  STANDARD OF REVIEW

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U. S. Steel &*

---

[27]  *See* Plaintiff's Amended Bankruptcy Schedules (Doc. No. 38), Attachments 1-7.

[28]  Motion for Summary Judgment (Doc. No. 33-1) at 11.

*Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds,* 30 F.3d 1347 (11th Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995)). "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349. The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co*., 9 F.3d 913, 918 (11th Cir. 1993), *reh'g and reh'g en banc denied,* 16 F.3d 1233 (11th Cir. 1994).

## IV.  LEGAL ANALYSIS

### A. Res Judicata

The doctrine of *res judicata* "precludes claims which a plaintiff actually raised or could have raised in a prior suit when" four requirements are met: "(1) there is a final judgment in a prior suit on the merits; (2) the decision in the prior suit is rendered by a court of competent jurisdiction; (3) the parties in both suits are identical; and (4) both suits involve the same cause of action." *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1355 (11th Cir. 2000).

Plaintiff argues that because the *Wilfong* Consent Decree states "[t]his decree shall not constitute an adjudication or finding on the merits of the case," Defendant fails to establish the first element of *res judicata*.[29] Plaintiff mistakenly interprets the language of the Consent Decree to mean that the decree does not constitute an adjudication of the claim. The Fifth Circuit stated that "because . . . a consent decree is a judicial determination, in the run of the docket cases it is given the finality accorded under the rules of claim preclusion" or *res*

---

[29]  Plaintiff's Response (Doc. No. 37) at 10; *see also Wilfong* Consent Decree Part I (Doc. No. 33-4), Ex. C-1 at 6.

*judicata*. *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 538 (5th Cir. 1978).  The Fifth Circuit further reasoned: "[t]he judgment is not an *inter partes* contract; the court is not properly a recorder of contracts, but is an organ of government constituted to make judicial decisions and when it has rendered a consent judgment it has made an adjudication."  *Id.* at 538-39 (quoting 1B Moore, Federal Practice ¶ 0.409[5] at 1030 (2d ed. 1965)).  Because a consent decree was obtained in the instant case and because that decree constitutes an adjudication, the first element of *res judicata* is met.  The second element of *res judicata* is also met whereas the Consent Decree in *Wilfong* was rendered by a court of competent jurisdiction.  Additionally, both Defendant and Plaintiff were parties in *Wilfong*.  Although Plaintiff was not a named party in *Wilfong*, she was a class member who never exercised her right to opt-out of the lawsuit.  As a class member, Plaintiff stood as a party to *Wilfong*.  *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550-51(1974) ("[W]here the District Court found that the named plaintiffs' asserted claims that were 'typical of the claims or defenses of the class' and would 'fairly and adequately protect the interests of the class,' [Fed. R. Civ. P.] 23(a)(3), (4),  the claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue.").  Hence, the third element of *res judicata* is met.  The question thus becomes whether *Wilfong* and the case at hand involve the same cause of action as required by the fourth element of *res judicata*.

> In the Eleventh Circuit:
>
>> the determination of whether the causes of action in two proceedings are the same is governed by whether the primary right and duty are the same. The test is one of substance, not form. Res judicata applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus

> of fact. . . . A court must look to the factual issues to be resolved [in the second cause of action], and compare them with the issues explored in the first cause of action.

*Manning v. City of Auburn*, 953 F.2d 1355, 1358-59 (11th Cir. 1992) (citations omitted).

Here, Plaintiff's retaliation claim arises out of the same "operative nucleus of fact" as the sex discrimination and sexual harassment claims brought forth in *Wilfong*. At its root, Plaintiff's claim is based on the adverse working conditions she was subjected to while employed by Rent-A-Center. Plaintiff contends that due process would prevent the application of *res judicata* to her claims because she had no notice that the *Wilfong* settlement would have released her retaliation claims.[30] The Notice of Proposed Class Action Settlement ("Notice") issued to potential class members states that the action in *Wilfong* covered all women who had been or who in the future may "be adversely affected by a continuing alleged policy of discrimination with regard to hiring, promotion, demotion, termination, sexual harassment, hostile work environment and terms and conditions of employment because of their sex."[31] That language is sufficiently broad to include the alleged retaliatory acts–"repeated transfers from store to store, denials of promotion and opportunities for promotion, and termination"–taken against Plaintiff because of the complaints she made to management.[32] Furthermore, in the portion dealing with "Injunctive Relief," the Consent Decree states, in pertinent part:

---

[30] Plaintiff's Response (Doc. No. 37) at 8-9.

[31] Notice (Doc. No. 33-3), Ex. B at 3.

[32] Second Amended Complaint (Doc. No. 19), ¶ 12 at 3.

-9-

> RAC and its officers, management (including supervisory employees), successors and assigns, and all those retained to perform tasks covered or required by this Consent Decree are hereby enjoined from violating Title VII by engaging in, implementing or permitting any action, policy or practice with the purpose of *retaliating against* any current or former employee of RAC because he or she opposed any practice made unlawful under Title VII . . . .[33]

The above language shows that retaliation is a claim that was contemplated by the parties and, as such, covered by the Notice to potential class members and by the Consent Decree. Additionally, the "Release of Claims" portion of the Consent Decree states that the Decree:

> *resolves all claims against RAC arising out of the Complaints filed in these actions*, and includes all claims of sex discrimination under Title VII that were made or could have been made by Class Members in *Wilfong et al*. . . . It includes all claims that could be made by Class Members in *Wilfong et al.* of unlawful hiring, promotion, working conditions, harassment or termination for which a remedy is provided under this Decree . . . .[34]

The release provision of the Consent Decree, which specifically covers the retaliatory acts alleged by Plaintiff, applies to Plaintiff because she was a member of the class in *Wilfong*. *See Cooper v. Federal Reserve Bank*, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation."). Plaintiff is thus barred from pursuing her retaliation claim and from seeking any remedy already provided under the Decree.[35] Because the Decree provides for both monetary and equitable relief, Plaintiff is

---

[33] *Wilfong* Consent Decree Part I (Doc. No. 33-4), Ex. C-1 at 29 (emphasis added).

[34] *Wilfong* Consent Decree Part II (Doc. No. 33-5), Ex. C-2 at 57 (emphasis added).

[35] *Id.*

prevented from pursuing both her claims for monetary damages and her claims for reinstatement and promotion. The types of harms alleged by Plaintiff were accounted for and adjudicated in *Wilfong*. Hence, the fourth element of *res judicata* is met and Plaintiff is precluded from bringing her retaliation claim.

### B. Accord and Satisfaction

Plaintiff's claim is additionally barred by the doctrine of accord and satisfaction. "'An accord and satisfaction occurs where (1) the parties intended to effect a settlement or resolve an existing dispute by entering into an agreement; and (2) the parties have engaged in actual performance in relation to the new agreement in order to resolve or settle the dispute.'" *Vencor Hospitals v. Blue Cross Blue Shield of Rhode Island*, 169 F.3d 677, 682 (11th Cir. 1999) (quoting *Pogge v. Department of Revenue*, 703 So. 2d 523, 526 (Fla. 1st DCA 1997). As Defendant correctly stated, "Defendant resolved its dispute with the *Wilfong* Class Action class members by agreeing to pay $47,000,000.00 in exchange for a waiver and release."[36] Plaintiff contends that "[b]ecause the consent decree excluded Plaintiff's retaliation claims pending before the EEOC at the time of entry of the *Wilfong* consent decree, Defendant's accord and satisfaction defense must fail as a matter of law."[37] As discussed above, retaliation is a claim that was contemplated in *Wilfong* and the Consent Decree covered the types of retaliatory actions alleged by Plaintiff. Because Plaintiff did not opt-out of the class in *Wilfong*, she bound herself to the terms of the Consent Decree and effectively released her claim against Defendant.

---

[36] Motion for Summary Judgment (Doc. No. 33-1) at 15.

[37] Plaintiff's Response (Doc. No. 37) at 12 (citing *Singley v. Illinois & Midland R.R. Inc.*, 24 F. Supp. 2d 900, 904).

Defendant satisfied its obligation to Plaintiff by issuing her a portion of the settlement funds in the form of a check. The fact that Plaintiff did not cash the check does not save Plaintiff's claim. Accordingly, Plaintiff's claim is barred by the doctrine of accord and satisfaction.

### C. Judicial Estoppel

In the alternative, it appears that Plaintiff is judicially estopped from pursuing her retaliation claim. "Judicial estoppel is an equitable doctrine invoked at a court's discretion" that precludes a party from "'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (citations omitted); *see also Parker v. Wendy's International, Inc.*, 365 F.3d 1268, 1271 (11th Cir. 2004); *Barger v. City of Cartersville*, 348 F.3d 1289, 1293 (11th Cir. 2003). "The purpose of the doctrine, 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Burnes*, 291 F.3d at 1285 (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).

The Eleventh Circuit generally considers two factors when determining the applicability of judicial estoppel to a particular case. *Burnes*, 291 F.3d at 1285. "'First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.'" *Id.* (quoting *Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001)). In *New Hampshire*, the Supreme Court noted that "'the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation

of principle.'" *Burnes*, 291 F.3d at 1285. The Supreme court went on to list three factors that "[c]ourts typically consider:"

> (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party.

*Id.* (quoting *New Hampshire*, 532 U.S. at 750-51). In light of *New Hampshire*, the Eleventh Circuit acknowledged that the two factors enumerated in *Burnes* "are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." *Burnes*, 291 F.3d at 1286.

In the case at hand, the fact that Plaintiff submitted her bankruptcy filings under oath to the bankruptcy court is undisputed. The issue thus becomes whether Plaintiff intended to defraud the judicial system. *See id.*

In addressing a debtor's obligation to disclose, the Eleventh Circuit stated:

> A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. 11 U.S.C. § 521(1), and 541(a)(7). The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change. *See* [*Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir. 1999)]. Full and honest disclosure in a bankruptcy case is "crucial to the effective functioning of the federal bankruptcy system." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al.*, 81 F.3d 355, 362 (3d Cir. 1996). . . . "[T]he importance of full and honest disclosure cannot be overstated." *Id.*

*Burnes*, 291 F.3d at 1286. Defendant argues that Plaintiff had multiple opportunities to disclose this pending employment claim to the bankruptcy court, including when Plaintiff filed her

Schedule of Personal Property, Statement of Financial Affairs, bankruptcy petition, and Amended Summary of Schedules. Indeed, it appears that Plaintiff had at least two opportunities to disclose this claim, the first when she filed her initial petition in September of 2004 and the second when she amended her Summary of Schedules in November of the same year. Defendant further argues that Plaintiff understood that her Statement of Financial Affairs required her to also list this litigation against Defendant because Plaintiff listed a foreclosure proceeding that was pending in state court at the time.[38] Plaintiff does not deny that she failed to disclose the instant case in her bankruptcy filings, but rather asserts that she did not intend to defraud the court in doing so. In support of her contention, Plaintiff filed a declaration of Evens Volcy, the non-lawyer who prepared her bankruptcy filings.[39] Mr. Volcy declares that Plaintiff disclosed her pending lawsuit to him at an initial interview and wanted to know whether the bankruptcy proceeding would affect her lawsuit.[40] He went on to state that he could not give Plaintiff legal advice and that he did not have sufficient information to include the lawsuit in the bankruptcy petition.[41] According to Volcy, his intention was to protect Plaintiff's residence from foreclosure by filing the bankruptcy petition immediately and to later amend Plaintiff's petition to include the instant lawsuit once he obtained additional information.[42]

---

[38] Plaintiff's Statement of Financial Affairs required her to list "all suits and administrative proceedings to which [Plaintiff/debtor] is or was a party within one year immediately preceding the filing" of her bankruptcy case.

[39] *See* Declaration of Evens Volcy (Doc. No. 41-2) at 1.

[40] *Id.*

[41] *Id.*

[42] *Id.*

Volcy declared, "[h]aving saved the property from foreclosure, I inadvertently forgot to get the information [about the lawsuit] in order to amend the petition."[43]

In *Barger v. City of Cartersville*, the attorney for Barger, the plaintiff/debtor, neglected to list Barger's pending employment discrimination lawsuit when preparing Barger's schedule of assets for a bankruptcy proceeding. 348 F.3d at 1295. Barger had specifically told his attorney about the discrimination lawsuit. *Id.* The attorney's omission did not prevent the court from finding that the discrimination claim should be judicially estopped. *Id.* The court reasoned:

> "there is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34, (1962). "If an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant." *Id.* at 634 n.10 (citations omitted).

*Barger*, 348 F.3d at 1295. Likewise, Volcy's omission of this lawsuit from Plaintiff's bankruptcy filings does not prevent Plaintiff's claim from being judicially estopped, even in light of Plaintiff's previous disclosure of the lawsuit to Volcy. The fact that Volcy is a nonlawyer bears no weight on the outcome of this analysis. The Bankruptcy Code places the duty to disclose squarely on the shoulders of the debtor. *See* 11 U.S.C. § 521. As the buck stopped with the plaintiff/debtor in *Barger*, so the buck stops here with Plaintiff.

---

[43] *Id.*

> The court in *Barger* further concluded:
>
>> [e]ven if Barger's failure to disclose could be blamed on her attorney, the nondisclosure could not in any event be considered inadvertent. The failure to comply with the Bankruptcy Code's disclosure duty is "inadvertent" only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment.

348 F.3d at 1295. Similarly, here Plaintiff's nondisclosure was not an inadvertent one. Plaintiff had knowledge of her undisclosed discrimination and retaliation lawsuit. Additionally, Plaintiff had a sufficient motive for concealment: "by omitting the claim[], she could keep any proceeds for herself and not have them become part of the bankruptcy estate," thus reducing the pool of funds available to satisfy Plaintiff's obligations to her creditors. *Barger*, 348 F.3d at 1296.

Last, the fact that Plaintiff amended her bankruptcy pleadings in April 2005 to include this claim does not prove that her previous omissions were inadvertent. *See id.* at 1297. In *Barger*, the plaintiff/debtor "attempt[ed] to reopen [her] bankruptcy estate to include her discrimination claim." *Id.* The court found that allowing Barger to re-open and subsequently amend her bankruptcy case only after her admission had "been challenged by an adversary" would "suggest[] that a debtor should consider disclosing potential assets only if [she] is caught concealing them." *Id.* (quoting *Burnes*, 291 F.3d at 1288); *see also Leon v. Comcar Industries, Inc.*, 321 F.3d 1289, 1291-92 (11th Cir. 2003) (plaintiff/debtor's attempt "to re-open his bankruptcy estate" to include an omitted employment discrimination claim did not serve as evidence of inadvertence when plaintiff/debtor did not seek to "amend his bankruptcy documents . . . until after [his opponent] relied on [the documents] in its motion to dismiss the [employment discrimination] case"). Unfortunately for Plaintiff, the April 2005 amendments to her bankruptcy filings do not prevent summary judgment on judicial estoppel grounds.

Although judicial estoppel would not bar Plaintiff from pursuing her claims for equitable relief, those "claims which add no monetary value to the bankruptcy estate," *Barger*, 348 F.3d at 1297, for reasons discussed above, Plaintiff has no valid claim for injunctive relief. Accordingly, summary judgment is warranted in favor of Defendant.

## V.  CONCLUSION

Based on the foregoing, it is ordered as follows:

1. Defendant's Motion for Summary Judgment (Doc. No. 33-1), filed March 29, 2005, is GRANTED.

2. The Clerk shall enter final judgment in favor of Defendant, Rent-A-Center, Inc., and remove this case, set for trial on June 1, 2006, from the trial calendar.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on October 17, 2005.

_____
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party